```
                    DISTRICT COURT OF THE VIRGIN ISLANDS
                      DIVISION OF ST. THOMAS AND ST. JOHN
```

SBRMCOA, LLC, individually and on       )
behalf of its members,                  )
                                        )
        Plaintiff,                      )
                                        )
        v.                              )     Civil No. 2006-42
                                        )
BAYSIDE RESORT, INC.; TSG               )
TECHNOLOGIES, INC.; TSG CAPITAL, INC.;  )
and BEACHSIDE ASSOCIATES, LLC,          )
                                        )
        Defendants.                     )
————————————————————————————————————————)
                                        )
WILLIAM PARRETT; TIMOTHY MUELLER;       )
RICHARD COSSE; BRUCE WATSON; and        )
BULLDAWG MARITIME, INC.,                )
                                        )
        Plaintiffs in Intervention,     )
                                        )
        v.                              )
                                        )
BEACHSIDE ASSOCIATES, LLC; and          )
SAPPHOMAR, LLC,                         )
                                        )
        Defendants in Intervention.     )
————————————————————————————————————————)

**APPEARANCES:**

**James M. Derr, Esq.**
Law Offices of James M. Derr
St. Thomas, VI
        *For SBRMCOA, LLC,*

**Bayside Resort, Inc.**
        *Unrepresented entity,*

**Gregory H. Hodges, Esq.**
Dudley, Topper & Feuerzeig
St. Thomas, VI
        *For the defendants TSG Technologies, Inc.; TSG Capital,
        Inc.; and for the defendant/defendant in intervention
        Beachside Associates, LLC,*

**Edward L. Barry, Esq.**
Law Offices of Edward L. Barry
St. Croix, VI
> *For the plaintiffs in intervention William Parrett; Timothy Mueller; Richard Cosse; Bruce Watson; and Bulldawg Maritime, Inc.,*

**Sapphomar, LLC**
> *Unrepresented entity.*[1]

### MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the motion to intervene of William Parrett, Timothy Mueller, Richard Cosse, Bruce Watson, and Bulldawg Maritime, Inc. (collectively, the "Intervenors").

### I.  FACTUAL AND PROCEDURAL HISTORY

The plaintiff, Sapphire Bay Resort and Marina Condominium Association, incorporated under the name "SBRMCOA, LLC" ("SBRMCOA"), is a condominium association, which was initially sponsored by the defendant Bayside Resort, Inc ("Bayside"), in 1998. The declaration of condominium which created SBRMCOA (the "Declaration") provided, among other things, that Bayside would provide fresh water and wastewater treatment services to SBRMCOA at a "reasonable rate." The Declaration also made all of the water facilities common property of SBRMCOA.

---

[1] The Plaintiffs in Intervention maintain that TSG Technologies, LLC, and TSG Capital, Inc., were dissolved and all their interests assigned to Sapphomar, LLC. It is unclear, however, whether counsel for TSG Technologies, LLC and TSG Capital, Inc., is also counsel for its apparent successor in interest. The record does not reflect any appearance entered on behalf of Saphomar nor, indeed, that Saphomar has been served.

To supply these water services, Bayside contracted with the defendants TSG Technologies, Inc., and TSG Capital, Inc. (collectively, "TSG"). Beginning in 1999, TSG provided water to SBRMCOA at the rate of $0.02 per gallon.

Thereafter, Bayside became delinquent on various debts. In particular, Bayside became delinquent on several debts it owed to TSG. Bayside also defaulted on a $9-million obligation to the defendant Beachside Associates, LLC ("Beachside"). Beachside is a trust incorporated in the Virgin Islands, with trustees in Florida.

In 2005, Bayside, TSG, and Beachside reached an agreement. Under the terms of this agreement, TSG would be assigned all of Bayside's rights to provide water services to SBRMCOA. The agreement also permitted TSG to raise the price of water from $0.02 to $0.05 per gallon.

Before the assignment of these rights could be implemented, SBRMCOA had to agree to it. SBRMCOA alleges that TSG threatened to shut off all water services if SBRMCOA did not agree. Shortly thereafter, Myron J. Poliner ("Poliner") a member of the board of directors of SBMRCOA, signed a water supply agreement (the "Water Supply Agreement").

The Water Supply Agreement authorized the rate increase and purported to transfer ownership of some of the water facilities

from SBRMCOA to Bayside. The Water Supply Agreement also included an arbitration clause.

SBRMCOA initiated this action in 2006. Shortly thereafter, the defendants moved to dismiss, claiming, inter alia, that the arbitration clause in the Water Supply Agreement required the dispute to be arbitrated.

On March 28, 2007, Beachside and Sapphomar LLC ("Sapphomar"), the successor of TSG, brought suit in the Superior Court of the Virgin Islands against the proposed intervenors, William Parrett; Timothy Mueller; Richard Cosse; Bruce Watson; and Bulldawg Maritime, Inc. (collectively, the "Proposed Intervenors"); among others. That case is captioned *Beachside Associates, Inc. v. Fishman*, ST-07-CIV-171 (the "Superior Court Case").

The Proposed Intervenors are former directors and agents of SBRMCOA. In particular, they all worked for SBRMCOA at or around the time the Water Supply Agreement went into effect. The gravamen of Beachside's and Sapphomar's complaint is that the Proposed Intervenors tortiously interfered with Beachside's and Sapphomar's rights under the Water Supply Agreement by obtaining water services from another provider. Specifically, they assert claims of impairment of a security interest, conversion, private nuisance, trespass, intentional interference with existing or

potential contractual relations, intentional harm to property interests, negligent harm to property interests, and conspiracy.

On April 18, 2007, this Court granted the various motions to dismiss and referred this matter to arbitration. SBRMCOA appealed, and Beachside and TSG filed a cross-appeal.

On February 11, 2013, the United States Court of Appeals for the Third Circuit vacated this Court's April 18, 2007, order, and remanded the matter for a determination of whether Poliner had the authority to enter into the Water Supply agreement.

A week after the Third Circuit's remand, and some seven years after this case was initiated, the Intervenors moved to intervene. The Intervenors seek to intervene on the grounds that they have an interest in the determination of whether or not the Water Supply Agreement was valid. Beachside and TSG oppose the Intervenors' petition.

## II.  DISCUSSION

### A.  Intervention of Right

Federal Rule of Civil Procedure 24 ("Rule 24") provides, in pertinent part,

> On timely motion, the court must permit anyone to intervene who
>
> (1) is given an unconditional right to intervene by a federal statute; or

> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). Where there is no federal statute granting a right to intervene, "the prospective intervenor must establish that: '(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.' " *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987).

B.  **Permissive Intervention**

Federal Rule of Civil Procedure 24(b) provides, in pertinent part: "On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In exercising this discretion to determine whether permissive intervention is appropriate, "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779 n.6 (3d Cir. 1994).

## III. ANALYSIS

### A. Intervention as of Right

The Court will first address whether the interests of the Proposed Intervenors can be adequately represented by an existing party in this litigation.

"The burden on proposed intervenors in showing inadequate representation is minimal, and would be satisfied if they could demonstrate that representation of their interests 'may be' inadequate." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). In evaluating whether there is a divergence of interests such that representation may be inadequate, courts look to three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki* 324 F.3d at 1086.

The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties. *See* 7C WRIGHT, MILLER & KANE, § 1909, at 318 (1986). " 'When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented.' " *In re Cmty.*

*Bank of N. Va.*, 418 F.3d 277, 315 (3d Cir. 2006) (quoting *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)). For example, in related contexts, courts have held that there is a presumption of adequate representation when the government is acting on behalf of a constituency that it represents. *See United States v. City of L.A.*, 288 F.3d 391, 401 (9th Cir. 2002). "To overcome the presumption of adequate representation, the proposed intervenor must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of a party to the suit." *Cmty. Bank*, 418 F.3d at 315 (citing *Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978)).

The Proposed Intervenors do not suggest that SBRMCOA is colluding with Beachside and TSG or that SBRMCOA is not diligently prosecuting this action. Moreover, the Proposed Intervenors largely concede that SBRMCOA has much the same interests in the outcome of this litigation as they do. Instead, they merely suggest that there may be some divergence on "issues such as indemnification, etc." (Mot. to Intervene 5.) Indeed, the Proposed Intervenors are agents and directors of SBRMCOA. There is thus little doubt that SBRMCOA will make the same arguments they would with respect to the validity of the Water Supply Agreement. Specifically, the Proposed Intervenors have been defending the Superior Court Case on the theory that the

Water Supply Agreement is invalid, because SBRMCOA's Board lacked the authority to enter into it. Similarly, SBRMCOA in this case is proceeding on the identical theory that the Water Supply Agreement is invalid because it was entered into by SBRMCOA's Board, which lacked authority to do so.

In *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997), a foundation sought to intervene in a constitutional challenge to state ballot initiative enacted into law by popular referendum. The foundation conceded that the state's governor and attorney general were "vigorously and professionally" defending the initiative. *Id.* at 1307. However, the foundation argued that both elected officials were term-limited and there was no guarantee that their successors would continue with their defense of the initiative. The Court of Appeals for the Ninth Circuit rejected this argument, holding that the foundation's mere "assertion that its interest might . . . at some . . . unspecified time in the future, diverge from the interest of the governor and attorney general is purely speculative, and does not justify intervention as a full-fledged party." *Id.* (citing *Moosehead San. Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979) (holding that "a petitioner must produce something more than speculation as to the purported inadequacy" in order to justify intervention as of right under Rule 24(a)(2)))).

Similarly, in this case, the Proposed Intervenors offer little more than speculation about future divergence of interests. The mere possibility that, at some unspecified future date, the Proposed Intervenors will be at odds about "issues such as indemnification, etc.," (Mot. to Intervene 5) is simply insufficient to overcome the presumption that SBRMCOA--the entity which they worked for or on behalf of--will adequately represent their interests in this action.

Turning to the second factor, the Proposed Intervenors have made no suggestion that SBRMCOA is unable or unwilling to advance all the same arguments they would advance were they to be included in this lawsuit. SBRMCOA has been prosecuting this action for over seven years, many of which included extensive litigation before the Third Circuit. There is no reason to believe SBRMCOA will not continue to litigate this matter with diligence and make all colorable arguments in favor of its position.

Third, although the Proposed Intervenors indicate there may be disagreement about indemnification, the possibility of such disagreement is ultimately immaterial to the instant analysis. Instead, the Court's focus is properly "whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki*, 325 F.3d at 1086. As noted above, the core of the dispute in the present case is

whether the Water Supply Agreement was invalid. The question of whether or not SBRMCOA should be liable to its agents or officers in the event the Water Supply Agreement was valid and was in fact breached is not an issue central to the Court deciding any of the claims made in this case. If anything, the inclusion of the Proposed Intervenors in the present case would seem to interject additional claims that are, arguably, only tangentially related to the claims sub judice.

Significantly, as noted above, the Proposed Intervenors do not suggest that their disagreement with SBRMCOA regarding indemnification might cause SBRMCOA to collude with Beachside and TSG, or otherwise fail to diligently prosecute this action. *See Brody*, 957 F.2d at 1123-24 (3d Cir. 1992) (holding that defendants had diligently prosecuted action even when they agreed to consent judgment, because that was simply "the inescapable legal consequence of application of fundamental law to the facts" and that the proposed intervenors might "have been less prone to agree to the facts and would have taken a different view of the applicable law does not mean that the defendants did not adequately represent their interests in the litigation." (quoting *Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3d Cir.), *cert. denied*, 426 U.S. 921 (1976) (internal quotation marks and citations omitted)).

Having failed to show that their rights would not be adequately protected by SBRMCOA, the Proposed Intervenors have no entitlement to intervene as a matter of right.

**B.     Permissive Intervention**

Unlike intervention as of right, "if the intervention is a permissive one the claim must be supported by independent jurisdictional grounds." *Beach v. KDI Corp.*, 490 F.2d 1312, 1319 (3d Cir. 1974) (citing *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531 (8th Cir. 1970); *see also Diamond v. Terminal R. Ala. State Docks*, 431 F.2d 228, 236 (5th Cir. 1970).

Ordinarily, a district court has jurisdiction "over civil actions arising under 'the Constitution, laws, or treaties of the United States' (federal question jurisdiction) and civil actions between citizens of different states with the amount in controversy exceeding the sum or value of $75,000 (diversity jurisdiction)." *Rockefeller v. Comcast Corp.*, 424 F. App'x 82, 83 (3d Cir. Apr. 18, 2011) (quoting 28 U.S.C. §§ 1331, 1332(a))

Here, in the proposed complaint-in-intervention, the Intervenors allege they are citizens of several states, including the state of Florida. One of the members of Beachside is a trust whose trustees are also citizens of Florida. There thus can be no diversity of citizenship. The Intervenors also do not assert any federal-law claim. The Court thus finds no independent basis for jurisdiction over the Intervenors' claims.

Accordingly, the Intervenors' request for permissive intervention must be denied.

An appropriate order follows.

                                                     S_____
                                                      Curtis V. Gómez
                                                        Chief Judge

Case: 3:06-cv-00042-CVG-RM    Document #: 126    Filed: 07/30/13    Page 13 of 13

SBRMCOR, LLC v. Bayside Resort, Inc.