```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                  DIVISION OF ST. THOMAS AND ST. JOHN

SBRMCOA, LLC, individually and on    )
behalf of its members,               )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )    Civil No. 2006-42
                                     )
BAYSIDE RESORT, INC.; TSG            )
TECHNOLOGIES, INC.; TSG CAPITAL, INC.;)
and BEACHSIDE ASSOCIATES, LLC,       )
                                     )
          Defendants.                )
                                     )
```

APPEARANCES:

**James M. Derr, Esq.**
Law Offices of James M. Derr
St. Thomas, VI
    *For SBRMCOA, LLC*

**Arthur Pomerantz, Esq.**
Law Offices of Arthur Pomerantz
St. Thomas, VI
    *For Bayside Resort, Inc.*

**Gregory H. Hodges, Esq.**
Dudley, Topper & Feuerzeig
St. Thomas, VI
**Neil D. Goldman, Esq.**
Goldman & Van Beek, P.C.
Alexandria, VA
    *For TSG Technologies, Inc.; TSG Capital, Inc. and Beachside*
    *Associates, LLC,*

## MEMORANDUM OPINION

**GÓMEZ, J.**

Before the Court are the motions of the plaintiff for partial summary judgment in this matter.

## I.    FACTUAL AND PROCEDURAL HISTORY

The plaintiff, Sapphire Bay Resort and Marina Condominium Association, incorporated under the name "SBRMCOA, LLC" ("SBRMCOA" or "the association"), is a condominium association. SBRMCOA was initially sponsored by the defendant Bayside Resort, Inc. ("Bayside"), in 1998. The declaration of condominium which created the association (the "Declaration") provided, among other things, that Bayside would provide fresh water and wastewater treatment services to "each [u]nit" and each unit owner would be required to pay Bayside for these services.

To supply these water services, Bayside contracted with the defendants TSG Technologies, Inc., and TSG Capital, Inc. (collectively, "TSG"). Beginning in 1999, TSG provided water to the unit owners at the rate of $0.02 per gallon.

Thereafter, Bayside became delinquent on various debts, including several debts it owed to TSG. Bayside also defaulted on a $9-million obligation to the defendant Beachside Associates, LLC ("Beachside").[1]

In 2005, Bayside, TSG, and Beachside reached an agreement regarding the supply of water to the condominiums. The proposed agreement (the "Water Supply Agreement") assigned all of Bayside's rights to provide water services to TSG, who would

---

[1] Beachside is a trust which served as one of Bayside's mortgagees.

provide water to the association and would be allowed to increase the cost from $0.02 per gallon to $0.05 per gallon.

Pursuant to the Water Supply Agreement, TSG would provide water to the association. The association would then provide that water to unit owners. This was a change from the previous service, in which TSG provided water directly to the individual unit owners.

The Water Supply Agreement also provided that Bayside, not SBRMCOA, owned all the water facilities, except the water plant. Additionally, its terms stated that the association agreed that all potable water charges incurred by individual unit owners would be a "common expense," as defined by the association's Declaration.

The Water Supply Agreement also included an arbitration clause. That clause, in pertinent part, provided: "[A]ny dispute or controversy arising out of or relating to this Agreement shall be submitted to and settled by mandatory binding arbitration to be held in the USVI [sic]. . . ." (ECF No. 105-1.)

Myron J. Poliner ("Poliner"), president of the association's board of directors ("the Board"), signed the Water Supply Agreement.

SBRMCOA initiated this action in 2006. Shortly thereafter, the defendants moved to dismiss, claiming, *inter alia*, that the

arbitration clause in the Water Supply Agreement required the dispute to be arbitrated.

On April 18, 2007, this Court granted the various motions to dismiss and referred this matter to arbitration. SBRMCOA appealed. Beachside and TSG filed a cross-appeal.

On February 11, 2013, the United States Court of Appeals for the Third Circuit vacated this Court's April 18, 2007, order, and remanded the matter for a determination of whether the Board had the authority to enter into the Water Supply agreement.

SBRMCOA now moves for summary judgment. SBRMCOA argues that the Board lacked the authority to enter the Water Supply Agreement. Beachside opposes the motion.

## II. DISCUSSION

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762

F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

## ANALYSIS

SBRMCOA's argument that the agreement was *ultra vires* must be decided by the Court. *SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 272 (3d Cir. 2013). This inquiry is limited to the formation of a binding agreement. *Id.* If the Board had the authority to enter the contract, SBRMCOA's challenges to the validity of the agreement, in whole are in part, are within the province of the arbitrator. *Id.*

The individual who signed the Water Supply Agreement must have had the authority to do so on behalf of SBRMCOA in order

for the contract to be binding on the association. *See SBRMCOA, LLC*, 707 F.3d at 271; *Sandvik AB v. Advent Intern. Corp.*, 220 F.3d 99, 106-08 (3d Cir. 2000). The Water Supply Agreement in this case was signed by Poliner, president of the Board. Thus, in this case, there are two inquiries the Court must make. First, whether Poliner had the authority to sign a contract on behalf of the Board. Second, whether the Board itself had the authority to enter the Water Supply Agreement on behalf of the association. In order to address these issues, a brief discussion of the law governing condominium associations is in order.

The Virgin Islands Condominium Act generally governs condominium associations. *See* V.I. CODE ANN., tit. 28, ch. 33. Pursuant to the Virgin Islands Code, individuals in a condominium or apartment complex may form an "association of apartment owners." *See* V.I. CODE ANN., tit. 28, §§ 901, 902. An "'association of apartment owners' means all of the apartment owners acting as a group in accordance with the bylaws and declaration." V.I. CODE ANN., tit. 28, § 901. All condominium associations "shall be governed by bylaws . . . which shall be annexed to the declaration and made a part thereof." V.I. CODE ANN., tit. 28, § 917. The bylaws and declaration of condominium are to be strictly adhered to. V.I. CODE ANN., tit. 28, § 906. As such, those documents govern this analysis.

**A. Poliner's Authority to Act for the Board**

As the president of the Board of Directors of SBRMCOA, Poliner had that authority which was delegated to him by the bylaws and the Board. *See Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 127-28 (3d Cir. 1998)("In general, an officer's powers stem from the organic law of the corporation, or a board delegation of authority which may be express or implied. Express authority to act on behalf of the corporation is usually manifested through a statute, the certificate of corporation, the by-laws, or a board . . . action.")

Under SBRMCOA's bylaws, an officer could enter a contract on behalf of the association where permitted by the Board. (ECF 105-5, Bylaws, IV.8.) The bylaws state, in pertinent part, "All agreements, contracts, deeds, leases, checks and other instruments of the Condominium shall be executed . . . by such other person or persons as may be designated by the Board of Directors." (ECF 105-5, Bylaws, IV.8.)

In a resolution dated August 7, 2005, the Board authorized Poliner to execute the Water Supply Agreement. (ECF 105-3, Resolution, Bd. of Dirs.) Therefore, to the extent that the Board had the authority to enter the Water Supply Agreement, that authority was properly delegated to Poliner per the association's bylaws.

The Court also notes that for purposes of the instant motions, SBRMCOA concedes that Poliner was duly authorized to act on behalf of the Board.

**B. The Board's Authority to Bind SBRMCOA**

Notwithstanding Poliner's authority to act on behalf of the Board, SBRMCOA argues that the Board lacked authority to enter into the Water Supply Agreement. SBRMCOA asserts that the Board's act was *ultra vires* under the association's declaration of condominium ("the Declaration").

A board of directors of a condominium association is limited to that authority granted to it by its governing documents. *Waggoner v. Laster*, 581 A.2d 1127, 1133-35 (Del. 1990) (cited with approval in *SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 271 (3d Cir. 2013) (stating that the Board's authority is narrower than that of the condominium association as a whole)). As discussed above, the governing documents of a condominium association are the declaration of condominium and bylaws. *See* V.I. CODE ANN., tit. 28, § 901.

Here, the Declaration states that the Board controls and governs "[a]ll of the affairs, policies, regulations and common property of the Condominium." (ECF 105-4., Decl. of Condo. § 4.D) The bylaws state that "[t]he Board of Directors shall have the powers and duties necessary for the administration of the affairs of the Condominium and may do all such acts and things

except those which by law or by the Declaration or by these By-Laws may not be delegated to the Board of Directors . . . ." (ECF 105-5, Bylaws, II.2.) As such, the issue is whether the provision of water constitutes an "affair" of the association, and thus falls within this broad grant of authority.

The "affairs of the Condominium" are not expressly defined in the Declaration, and the Court is unaware of any case law specifically defining the term. In the absence of another established meaning, courts give text its ordinary meaning. *U.S. v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008). The ordinary meaning of words may be discovered through the use of "standard reference works," such as dictionaries. *Id.* "Affair" is defined by the Oxford English Dictionary as: ". . . something to be done; a piece or item of business; an occupation, a pursuit; a task, a duty." Affair, *Oxford English Dictionary* (3d ed. 2012). Merriam-Webster defines it as a "commercial, professional, public, or personal business." Affair, *Webster's Third New International Dictionary* (Merriam Webster 1993).

Neither dictionary explicitly lists whether provision of water to condominium unit owners is an "affair." That said, a straight-forward reading of the term, considering both definitions, is that an "affair" of any entity is something which is a common activity or business of such an entity. The definitions can also be read to mean that any activity

undertaken pursuant to an official task or duty is within the meaning of "affair."

The association has the "power and duty to obtain, for the benefit of the Condominium Property, water, electric, and sewage services . . . ." (ECF 105-4, Decl. of Condo. § 4.B.3.) Not only is the provision of water something which easily seems to fit within the usual business of a residential association on St. Thomas, but it is something which the association is specifically directed to do. As such, based upon the ordinary meaning of the word "affair," the Court finds that contracting for the provision of water is one of the affairs of the association. Because the authority to conduct such affairs has been delegated to the Board, the Court finds that the Board had the authority to enter the Water Supply Agreement.

While the Court has determined that contracting for the provision of water is an "affair" of the association, the Court's inquiry is not complete. Indeed, the Declaration and bylaws expressly give the Board the authority to conduct the affairs of the association only if such duties are not otherwise prohibited. (ECF 105-4., Decl. of Condo. § 4.D; ECF 105-5, Bylaws, II.2.) Thus, the Court must now turn its attention to whether the Declaration, bylaws, or the law prohibit the Board from entering a contract for water.

SBRMCOA, LLC v. Bayside Resort, Inc.
Civil No. 2006-42
Memorandum Opinion
Page 11

    SBRMCOA does not direct the Court's attention to any provision of the Declaration or bylaws which prohibits the Board from entering contracts, and none is apparent to the Court.[2] Similarly, there is no provision that restricts affairs pertaining to water to the exclusive province of the association. While the Declaration certainly includes obtaining water among the duties and powers of the association, it does not purport to exclude delegation of that power. (*See* ECF 105-4, Decl. of Condo. § 4.B.3.)

---

[2] Indeed, a review of the Declaration and bylaws indicates that, while not mentioning so specifically, the bylaws contemplate that the Board will enter contracts for the association. Article II, section 2, of the bylaws, "Powers and Duties," provides in pertinent part:

> The Board of Directors shall have the powers and duties necessary for the administration of the affairs of the Condominium . . . . Such powers and duties of the Board of Directors *shall include*, but *shall not be limited to*, . . . .
>
> (g) Purchasing or leasing or otherwise acquiring in the name of the [Board] on behalf of all Unit Owners, Units offered for sale or surrendered by their owners to the [Board].
> (h) Purchasing of Units at foreclosure or other judicial sales in the name of the [Board] on behalf of all Unit owners.
> (i) Selling, leasing, mortgaging . . . or otherwise dealing with Units acquired by the Association . . .
> (k) Obtaining insurance for the Condominium Property, including the Units . . .
> (l) Making of repairs, additions and improvements to or alterations of the Condominium Property . . .

(ECF 105-5, Bylaws, II.2.)(emphasis added)

    Exercise of any of these powers of the Board would require the execution of contracts. The bylaws also implicitly presume that the Board may enter contracts where the bylaws allow the Board to delegate that authority to officers. (ECF 105-5, Bylaws, IV.8.)

Finally, the Court is unaware of any provision of law that limits the Board's authority to contract on the association's behalf, once the Board has been vested with such authority.

As such, the Board acted within its authority, delegated to it by the association, when it entered the Water Supply Agreement.

## **CONCLUSION**

For the foregoing reasons, the Court will deny SBRMCOA's motions for partial summary judgment.

In light of the Court's findings, the parties shall brief, not later than 3:00 PM on November 8, 2013, whether this matter should be submitted to arbitration. An appropriate order follows.

            S\_____
            **Curtis V. Gómez**
            **District Judge**