DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| SBRMCOA, LLC, individually and on behalf of its members,<br><br>       Plaintiff,<br><br>       v.<br><br>BAYSIDE RESORT, INC.; TSG TECHNOLOGIES, INC.; TSG CAPITAL, INC.; and BEACHSIDE ASSOCIATES, LLC,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil No. 2006-42 |

APPEARANCES:


**Maria Tankenson Hodge, Esq.**
Hodge & Hodge,
St. Thomas, VI
    *For SBRMCOA, LLC,*


**Arthur Pomerantz, Esq.**
Law Offices of Arthur Pomerantz
St. Thomas, VI
    *For Bayside Resort, Inc.,*


**Gregory H. Hodges, Esq.**
Dudley, Topper & Feuerzeig
St. Thomas, VI
**Neil D. Goldman, Esq.**
Goldman & Van Beek, P.C.
Alexandria, VA
    *For TSG Technologies, Inc.; TSG Capital, Inc. and Beachside*
    *Associates, LLC.*

### AMENDED MEMORANDUM OPINION[1]

**GÓMEZ, J.**

Before the Court is the writ of mandamus issued by the
United States Court of Appeals for the Third Circuit.[2]

## I.   FACTUAL AND PROCEDURAL HISTORY

The plaintiff, Sapphire Bay Resort and Marina Condominium
Association, incorporated under the name "SBRMCOA, LLC"
("SBRMCOA" or "the Association"), is a condominium association.
SBRMCOA was initially sponsored by the defendant Bayside Resort,
Inc. ("Bayside"), in 1998. The declaration of condominium which
created the Association (the "Declaration") provided, among
other things, that Bayside would provide fresh water and
wastewater treatment services to "each [u]nit" and each unit
owner would be required to pay Bayside for these services.

To supply these water services, Bayside contracted with the
defendants TSG Technologies, Inc., and TSG Capital, Inc.
(collectively, "TSG"). Beginning in 1999, TSG provided water to
the unit owners at the rate of $0.02 per gallon.

---

[1] The memorandum opinion entered on August 19, 2016, was prematurely uploaded
as it inadvertently included incomplete citations to authority and an errant
interchange of the term "Water Supply Agreement" with "Declaration." That
oversight and certain minor edits are addressed in this amended memorandum
opinion.
[2] On March 31, 2016, the Court referred this matter to arbitration. This
memorandum opinion provides the reasoning for the Court's March 31, 2016,
order.

*SBRMCOA v. Bayside Resort, Inc.*
Civil No. 2006-42
Memorandum Opinion
Page 3

Thereafter, Bayside became delinquent on various debts, including several debts it owed to TSG. Bayside also defaulted on a $9 million obligation to the defendant Beachside Associates, LLC ("Beachside").[3]

In 2005, Bayside, TSG, and Beachside reached an agreement regarding the supply of water to the condominiums. The agreement (the "Water Supply Agreement") contained a number of provisions related to supplying water to Sapphire Bay Resort and Marina Condominiums.  One provision of the Water Supply Agreement assigned Bayside's obligation to provide water to individual unit owners to SBRMCOA. Another provision provided for the Association's acceptance of water from TSG in accordance with a separate agreement in which Bayside assigned to TSG, Bayside's obligation to provide water.  The Water Supply Agreement further provided that there would be an increase in the price of water from $0.02 per gallon to at least $0.05 per gallon.

Pursuant to the Water Supply Agreement and separate assignment of Bayside's obligations, TSG would provide water to the Association.  The Association would then provide that water to the unit owners.  This was a change from the previous service, in which Bayside provided water directly to the individual unit owners.

---

[3] Beachside is a trust which served as one of Bayside's mortgagees.

*SBRMCOA v. Bayside Resort, Inc.*
Civil No. 2006-42
Memorandum Opinion
Page 4

The Water Supply Agreement also provided that Bayside, not SBRMCOA, owned all the water facilities, except the water plant. Additionally, the Water Supply Agreement stated that the Association agreed that all potable water charges incurred by individual unit owners would be a "common expense," as defined by the Association's Declaration.

The Water Supply Agreement also included an arbitration clause.  That clause, in pertinent part, provided that "any dispute or controversy arising out of or relating to this Agreement shall be submitted to and settled by mandatory binding arbitration to be held in the USVI [sic]. . . ." (ECF No. 105-1.)

Myron J. Poliner ("Poliner"), president of the Association's board of directors ("the Board"), signed the Water Supply Agreement.

SBRMCOA initiated this action against Bayside, Beachside, and TSG in 2006. Shortly thereafter, the defendants moved to dismiss, claiming, *inter alia*, that the arbitration clause in the Water Supply Agreement required the dispute to be arbitrated.

On April 18, 2007, this Court granted the various motions to dismiss and referred this matter to arbitration. SBRMCOA appealed. Beachside and TSG filed a cross-appeal.

SBRMCOA, LLC v. Bayside Resort, Inc.
Civil No. 2006-42
Memorandum Opinion
Page 5

On February 11, 2013, the United States Court of Appeals
for the Third Circuit vacated this Court's April 18, 2007,
order, and remanded the matter for a determination of whether
the Board had the authority to enter into the Water Supply
agreement. In particular, the Third Circuit stated that:

> The Condominium Association has raised a bona
> fide question as to whether its Board
> possessed the authority to enter into the
> Water Supply Agreement. Because this question
> goes to the formation of the contract rather
> than its validity, it requires a judicial
> determination. Accordingly, we will vacate the
> order of the District Court and remand for
> additional discovery regarding that question.
> Also, for the reasons stated, we will affirm
> the District Court's holding that the
> Condominium Association's coercion claims are
> arbitrable.

SBRMCOA, LLC. V. Bayside Resort, Inc., 707 F.3d 267, 275 (3d
Cir. 2013).

SBRMCOA then moved this Court for summary judgment on the
issue of whether the Board had the authority to enter into the
Water Supply Agreement. In a memorandum opinion dated October
25, 2013, this Court found that the Board did have the authority
to enter into the Water Supply Agreement. Thereafter, on
December 11, 2013, this matter was again ordered to arbitration.

SBRMCOA appealed the Court's October 25, 2013, and December
11, 2013, orders to the Third Circuit. In a December 16, 2014,
opinion, the Third Circuit found that it lacked jurisdiction
over SBRMCOA's appeal. In particular, it stated:

> In the events leading to the present appeal,
> the District Court at first neither dismissed
> nor stayed the case, but rather ordered all
> claims to arbitration without addressing the
> status of the case. Despite that, the
> Condominium Association says we have
> jurisdiction because the District Court's
> order amounted to a dismissal. But, we have
> not held that a case has been dismissed under
> the FAA absent express language from the
> district court to that effect. In fact, we
> have held to the contrary. In *Freeman v.
> Pittsburgh Glass Works, LLC,* 709 F.3d 240, 247
> (3d Cir.2013), we said that the district court
> did not dismiss the case and thus did not
> relinquish jurisdiction when it
> administratively closed the case but "never
> mentioned a dismissal—either with or without
> prejudice." *Id.* We concluded that "by closing
> the case—rather than dismissing it—the
> [district] court maintained an implicit
> supervisory role over the arbitration" and
> could have reopened the case at any time to
> resolve issues that arose during
> arbitration. *Id.* at 248 . . . Thus, we
> conclude that we lack appellate jurisdiction
> in this case.

*SBRMCOA, LLC v. Bayside Resort, Inc.*, 596 Fed. App'x 83, 86 (3d

Cir. 2014)(footnote omitted).

At the same time, the Third Circuit issued a writ of

mandamus to this Court. In particular, the Third Circuit stated:

> Here, while perhaps understandably perceiving
> its ruling as dealing with the question we
> identified in our opinion accompanying remand,
> the District Court did not comply fully with

SBRMCOA, LLC v. Bayside Resort, Inc.
Civil No. 2006-42
Memorandum Opinion
Page 7

> our mandate.[4] In *SBRMCOA I,* we highlighted
> the need for the District Court to determine
> whether the Board's entry into the Water
> Supply Agreement constituted an amendment of
> the Declaration of Condominium and, thus,
> was *ultra vires.* We noted the possibility that
> the Water Supply Agreement could be an
> amendment of the Declaration, and we explained
> how an amendment would have properly been
> effectuated. *SBRMCOA I,* 707 F.3d at 272. The
> District Court instead focused on whether the
> Water Supply Agreement touched on an "affair"
> of the Condominium Association and thus was
> authorized. It never mentioned the amendment
> issue we directed to its attention and which
> comprised the entirety of Appellant's briefing
> on remand.

*See id.* at 87-88.

The Third Circuit has ordered this Court to consider
"whether the Water Supply Agreement constituted an unauthorized
amendment [to SBRMCOA's Declaration], and, based upon this
determination, whether the Board was authorized in law and fact

---

[4] The Third Circuit also noted that:

> In *SBRMCOA I,* we repeatedly directed the District Court, on
> remand, to "determine whether the Board was, in fact and law,
> authorized to execute the Water Supply Agreement." 707 F.3d at
> 272. *See also id.* at 273 (instructing the district court to
> answer the "question as to whether the Board was authorized to
> sign the Water Supply Agreement"); *id.* at 275 (directing the
> district court to determine "whether [the] Board possessed the
> authority to enter into the Water Supply Agreement"). The
> District Court in fact did answer that question. Thus, the
> District Court's decision to answer the ultimate question,
> though not in the manner we directed, is perhaps an error of
> our own making.

*SBRMCOA, LLC v. Bayside Resort, Inc.*, 596 F. App'x 83, 88 (3d Cir. 2014).

Case: 3:06-cv-00042-CVG-RM   Document #: 171   Filed: 09/08/16   Page 8 of 27
*SBRMCOA v. Hyatt et al.,*
Civil No. 2006-42
Memorandum Opinion
Page 8

to enter into the Water Supply Agreement." *See id.* at 88. On June 23, 2015, SBRMCOA filed a motion for summary judgment addressing those issues.

## II.  DISCUSSION

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

trial." *Id.* In making this determination, this Court draws all

reasonable inferences in favor of the non-moving party. *See Bd.*

*of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster*

*v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III. <u>ANALYSIS</u>

The February 11, 2013, remand instructed the Court to

determine whether the

> Water Supply Agreement amended the Declaration in
> two respects: (1) by changing the rates charged for
> water; and (2) by converting an individual expense
> into a common charge . . . [and remanded the case]
> so the District Court c[ould] determine whether the
> Board was, in fact and law, authorized to execute
> the Water Supply Agreement.

*SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 272 (3d Cir.

2013). The Third Circuit's December 16, 2014, mandate clarifies

that this Court should consider "whether the Water Supply

Agreement constituted an unauthorized amendment . . . [to

SBRMCOA's Declaration], and, based upon this determination*,*

whether the Board was authorized in law and fact to enter into

the Water Supply Agreement." *See SBRMCOA, LLC*, 596 Fed. App'x at

88.

#### A. Framework for the Court's Inquiry

To properly address the issues raised by the Third Circuit,

a brief review of the Federal Arbitration Act[5] is in order.

---

[5] 9 U.S.C. § 1 *et seq.*

*SB__Asel, 3:06-CV-00042-CVG-RM , Docu* ___

Civil No. 2006-42
Memorandum Opinion
Page 10

Pursuant to the Federal Arbitration Act, when a contract
containing an arbitration provision is before the Court, the
Court's inquiry into the *validity of the contract* is limited.
Generally, "a challenge to the validity of the contract as a
whole, and not specifically to the arbitration clause, must go
to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546
U.S. 440, 449 (2006). For example, a challenge is a challenge to
the validity of the contract as a whole if the party opposing
arbitration argues that the agreement as a whole was
fraudulently induced or "that the illegality of one of the
contract's provisions renders the whole contract invalid." *See
id.* at 444 (footnote omitted).

However, if the challenge to the agreement as a whole

> concerns contract formation, the dispute is
> generally for courts to decide. See, *e.g., First
> Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938,
> 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ("When
> deciding whether the parties agreed to arbitrate a
> certain matter . . . courts generally ... should
> apply ordinary . . . principles that govern the
> formation of contracts"); *AT & T Technologies,
> supra,* at 648–649, 106 S.Ct. 1415 (explaining the
> settled rule in labor cases that " 'arbitration is
> a matter of contract' " and "arbitrators derive
> their authority to resolve disputes only because the
> parties have agreed in advance to submit such
> grievances to arbitration"); *Buckeye Check Cashing,
> Inc. v. Cardegna,* 546 U.S. 440, 444, n. 1, 126 S.Ct.
> 1204, 163 L.Ed.2d 1038 (2006) (distinguishing
> treatment of the generally nonarbitral question
> whether an arbitration agreement was "ever
> concluded" from the question whether a contract
> containing an arbitration clause was illegal when

formed, which question we held to be arbitrable in
certain circumstances).

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296-
97 (2010); *see also Buckeye Check Cashing, Inc.*, 546 U.S. at 444
n.1 (indicating that the Supreme Court's opinion did not address
whether the Court or the arbitrator decides "whether the alleged
obligor ever signed the contract, . . . whether the signor
lacked authority to commit the alleged principal, . . . [or]
whether the signor lacked the mental capacity to assent . . .
"). In addition, a challenge specifically directed at the
validity of an agreement to arbitrate, not the contract as a
whole, is resolved by the courts, not arbitrators. *See id.* at
444-45.

An argument that a contract is *ultra vires* is a challenge
to contract formation. *SBRMCOA, LLC v. Bayside Resort, Inc.*, 707
F.3d 267, 271 (3d Cir. 2013). As such, if a party argues that a
contract containing an arbitration clause is *ultra vires*--
because, for example, it was signed by an unauthorized
individual--it is a matter for the Court to decide. *See, e.g.
Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 108 (3d Cir.
2000). Similarly, if a party asserts that the arbitration
provision itself, not the contract as a whole, was *ultra vires*,
that issue is for the Court. *See, e.g., W.M. Schlosser Co. v.
Sch. Bd. of Fairfax Cty., Va.*, 980 F.2d 253, 254 (4th Cir.

SBA vs. Gov't of the Virgin Islands, et al.
Civil No. 2006-42
Memorandum Opinion
Page 12

1992); *City of Atlanta v. Brinderson Corp.*, 799 F.2d 1541, 1544 (11th Cir. 1986); *S. Constructors, Inc. v. Loudon Cty. Bd. of Educ.*, 58 S.W.3d 706, 718 (Tenn. 2001); *Anne Arundel Cty. v. Fraternal Order of Anne Arundel Det. Officers & Pers.*, 313 Md. 98, 110-14, 543 A.2d 841, 847-49 (1988).

The Court is unaware of any authority at common law that stands for the proposition that when a provision of a contract other than the arbitration provision is *ultra vires*, the entire contract, including the arbitration provision, is *ultra vires*. Indeed, to the contrary, absent some special circumstance, the common law generally recognizes that

> when a part of a divisible grant or contract is *ultra vires* or illegal, but not *malum in se*, and the remainder is lawful, the latter may be sustained and enforced unless it appears from a consideration of the whole grant or contract that it would not have been made without the part which is *ultra vires* or illegal.

*McCullough v. Smith*, 243 F. 823, 833 (8th Cir. 1917); *see also City of Del Rio v. Ulen Contracting Corp.*, 94 F.2d 701, 705 (5th Cir. 1938)("Even if the city lacked authority to delegate the stated supervisory powers to the United States, that *ultra vires* action between the city and PWA would not *ipso facto* vitiate the city's construction contract with appellee, and automatically relieve the city from its obligation with appellee. Where the invalid portion of a contract can be severed from the remainder without impairing the valid part, the latter will be sustained

and the contract *pro tanto* enforced."); *cf. Smith v. McCullough*, 270 U.S. 456, 464-65 (1926) (declining to apply *common law* severability doctrine to Indian lessee's lease of mining patent for a period in excess of a statutory minimum where to do so would vitiate explicit federal law limiting terms of such mining leases on Indian land). As such, if the contract as a whole is not enforced because a provision was *ultra vires*, it is because the clause is not severable as a matter of the parties' intent, not because the entire contract is *ultra vires*. *See McCullough*, 243 F. at 833.

Determining the parties' intent with regard to the severability issue is well within the competence of the arbitrator. Since severability implicates the contract as a whole and requires a determination of the parties' intent, not a determination of whether the remainder of the contract is *ultra vires*, the matter is properly reserved for the arbitrator. Indeed, leaving the determination to the arbitrator is consistent with *dicta* in *Buckeye Check Cashing, Inc.*, in which the Supreme Court indicated that it is for the arbitrator to resolve an argument that "the illegality of one of the contract's provisions renders the whole contract invalid." *See Buckeye Check Cashing, Inc.*, 546 U.S. at 444.

It follows that when the Court considers issues regarding *ultra vires* acts with regard to a contract that contains an

arbitration clause, the Court's inquiry is generally properly
limited to considering: (1) whether the contract as a whole is
*ultra vires*, and (2) whether the arbitration clause is itself
*ultra vires*. Determining whether the contract as a whole is
*ultra vires* may, under certain circumstances, require the
determination of whether a specific provision is *ultra vires*.
For example, if a contract is intended to last three years and
the corporation entering into the contract may only enter into a
contract lasting one year, the entire contract, including the
arbitration provision, would be *ultra vires* <u>after</u> the one-year
period expired, even if the final two years were severable from
the contract.

### B. The Third Circuit's Mandate

Having laid this analytical framework, the Court turns to
the Third Circuit's mandate. As previously noted, the mandate
requires the Court to consider "whether the Water Supply
Agreement constituted an unauthorized amendment . . . [to
SBRMCOA's Declaration,] and, based upon this determination,
whether the Board was authorized in law and fact to enter into
the Water Supply Agreement." *See SBRMCOA, LLC*, 596 Fed. App'x at
88.

### 1. The Court's Interpretation of the Mandate

Before the Court acts on the Third Circuit's mandate, the
Court must properly identify the inquiry required by the Third

Circuit. As such, resolving several interpretive issues is

necessary.

First, the Court notes that the Board's authority is

derived from the by-laws. *See* 28 V.I.C. § 918(a)("The bylaws may

provide for  . . . the powers and duties of the Board . . . .")

The by-laws provide that the:

> *The Board of Directors shall have the powers and*
> *duties necessary* for the administration of the
> affairs of the Condominium and may do all such acts
> and things *except those which* by law or *by the*
> *Declaration or by these By-Laws may not be delegated*
> *to the Board of Directors* by the Unit Owners.

(ECF 105-5, By-laws Art. 2 § 2)(emphasis supplied). Therefore,

insofar as the Water Supply Agreement conflicts with the

Declaration, the terms of the Declaration govern. *See id.*

The Declaration may only be amended by a "vote of at least

67% in common interest of all Unit Owners . . . ." (ECF 105-4,

Decl. of Condo. § 9.) No party has ever asserted, or provided

any evidence to the Court, that any such vote occurred.

Therefore, the Water Supply Agreement did not validly amend the

Declaration.

While that conclusion may appear on its face to resolve the

question of whether the Water Supply Agreement was an amendment

to the Declaration, the Court understands the Third Circuit

mandate as a direction to fully address the spirit of the

dispute. See *SBRMCOA, LLC*, 596 Fed. App'x at 87 ("A trial court

must implement both the letter and spirit of the mandate, taking
into account the appellate court's opinion and the circumstances
it embraces." (internal quotation marks omitted)). Thus, the
Court's inquiry is not over.

Indeed, without a valid amendment of the Declaration, it
follows that any conflict between a provision in the Water
Supply Agreement and the Declaration only informs the Court that
such a provision in the Water Supply Agreement is void. As such,
having reviewed the mandate, the Court concludes that the Third
Circuit is instructing the Court, among other things, to
determine whether the Water Supply Agreement conflicts with the
Declaration and is an *ultra vires* undertaking by the Board.

Second, in the event that the Water Supply Agreement
conflicts with the Declaration, the Court must determine the
proper manner in which to proceed. As previously noted, when
addressing an argument that a contract or part of a contract is
*ultra vires*, the Court's inquiry is generally limited to
considering: (1) whether the contract as a whole is *ultra vires*,
and (2) whether the arbitration clause is itself *ultra vires*.
The Court previously held that the Board did have the authority
to enter into a water supply agreement.[6] *SBRMCOA, LLC v. Bayside*

---

[6] The Court also previously held that Poliner was authorized to execute the
Water Supply Agreement on the Board's behalf. *SBRMCOA, LLC v. Bayside Resort,
Inc.*, No. CV 2006-42, 2013 WL 5781228, at *3 (D.V.I. Oct. 25, 2013).

*Resort, Inc.,* No. CV 2006-42, 2013 WL 5781228, at *4 (D.V.I.
Oct. 25, 2013). In addition, no party has argued that any
provision of the Declaration would render the arbitration
provision itself *ultra vires*, and it is not apparent to the
Court that any provision of the Declaration would render the
arbitration provision itself *ultra vires*.

Therefore, the Court must engage in a two-part inquiry,
considering: (1) whether any provisions of the Water Supply
Agreement conflict with the Declaration; (2) if a provision of
the Water Supply Agreement conflicts with the Declaration,
whether that conflict renders the Water Supply Agreement as a
whole, including the arbitration clause, *ultra vires*, or merely
raises a question of severability. In the event that an *ultra
vires* provision renders the entire contract *ultra vires*, the
Court must address all issues in this matter. *See* Section III.A.
In contrast, if an *ultra vires* provision only raises a question
of severability, this matter must be referred to arbitration.
*See id.*

### 2. Ultra Vires

SBRMCOA argues that multiple provisions in the Water Supply
Agreement are *ultra vires* because they conflict with the
Declaration. Specifically, SBRMCOA argues that the Water Supply
Agreement was *ultra vires* with respect to the Board because the
Water Supply Agreement: (1) changes the obligation to pay for

water from an individual obligation to a common expense; (2)
provides that Bayside was responsible for supplying water to the
Association, not individual owners; and (3) requires the
Association to pay Bayside's debts. In addition, SBRMCOA argues
that the Water Supply Agreement is *ultra vires* with respect to
Bayside because the Water Supply Agreement binds the Association
to a contract with Bayside with a duration greater than one
year.

### i.   Water as a Common Expense

The Court will first consider whether changing the
obligation to pay for water to a common expense conflicts with
the Declaration.

Section 1.C.ii of the Water Supply Agreement provides that
the Association will collect charges for potable water as a
common expense. (ECF No. 105-1, Water Supply Agreement §
1(c)(ii)) ("Section 1.C.ii"). Under the Virgin Islands
Condominium Act, "'[c]ommon expenses' means and includes . . .
expenses declared common expenses by provisions of this chapter,
or by the declaration or the bylaws." 28 V.I.C. § 901(g). The
Declaration provides that common expenses include "any . . .
expenses agreed upon . . . by the Board of Directors of the
Association and incurred by the Association . . . ." (ECF 105-4,
Decl. of Condo. § 2.C.) ("Section 2.C").

Once the Board exercises its authority to designate an expense as a common expense, that expense must be apportioned among the owners by percentage interest under Virgin Islands law, 28 V.I.C. § 909, and the Declaration, (ECF 105-4, Decl. of Condo. § 2.C.).

Significantly, the Declaration elsewhere provides that

> [p]otable water shall be supplied by the Sponsor, its successors or assigns, through the Common Interests of the Condominium directly to each Unit and each Unit Owner shall be required to pay to the Sponsor the charge therefore established, from time to time, by the Sponsor. Sponsor hereby reserves the right to establish reasonable charges for potable water and in determining such charge shall consider, among other things, its cost of installing, constructing, maintaining, operating, repairing and replacing the equipment necessary to provide such water and cost of capital in connection therewith.

(*Id.* at § 3.J.1.)("Section 3.J.1"). As such, when the Board, through Poliner, designated potable water as a common expense, it arguably created an apparent conflict between Section 3.J.1 of the Declaration (and 28 V.I.C. § 909) and Section 2.C of the Declaration that could require different allocations of costs and require payments to different entities.

Assessing whether Section 1.C.ii of the Water Supply Agreement is valid requires a threshold determination of which Declaration provision takes precedence. If Section 2.C of the Declaration takes precedence over Section 3.J.1 of the Declaration, then the Board, in agreeing to Section 1.C.ii of

the Water Supply Agreement, would not have engaged in *ultra vires* conduct.  If Section 3.J.1 of the Declaration takes precedence over Section 2.C of the Declaration, then the Board, in agreeing to Section 1.C.ii of the Water Supply Agreement, would have effected an unauthorized amendment to the Bylaws. In that case, Section 1.C.ii of the Water Supply Agreement would be *ultra vires*.

In determining which section of the Declaration takes precedence, the Court is guided by canons of statutory construction. *See Aleynikov v. Goldman Sachs Grp., Inc.*, 765 F.3d 350, 359 (3d Cir. 2014)("By-laws are interpreted in accordance with the rules used to interpret statutes, contracts, and other written instruments.")(applying Delaware law); *Spring Gardens Homes Ass'n v. Francis*, 15 V.I. 243, 249 (Terr. Ct. 1976)("The same rules which govern the construction of statutes, contracts and other written instruments apply to the interpretation of charters, articles and other corporate instruments."). Most relevant here is the canon that provides that "[a] general statutory rule usually does not govern unless there is no more specific rule." *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524, 109 S. Ct. 1981, 1992, 104 L. Ed. 2d 557 (1989).

Section 2.C of the Declaration generally provides that the Board may declare "any expense" a common expense. (ECF 105-4,

Decl. of Condo. § 2.C.). It does not specifically mention
potable water expenses. It would seem then that Section 2.C of
the Declaration is the general rule.

The allocation of potable water expenses is not, however,
left to be addressed by the general rule. (*See id.* at § 3.J.1.)
Section 3.J.1 of the Declaration specifically addresses the
allocation of those expenses. (*See id.*) Therefore, with regard
to potable water, Section 3.J.1 of the Declaration, not Section
2.C of the Declaration, governs. *See Green*, 490 U.S. at 524. On
that basis, the Court holds that the Board undertook *ultra vires*
action when it agreed to Section 1.C.ii of the Water Supply
Agreement as the Board could not declare potable water to be a
common expense in derogation of Section 3.J.1 of the
Declaration. Thus, Section 1.C.ii of the Water Supply Agreement
is *ultra vires.*


### ii.  The Effect of the *Ultra Vires* Provision on the Validity of the Water Supply Agreement

The conclusion that at least one provision of the Water
Supply Agreement--Section 1.C.ii--is *ultra vires* and beyond the
power of the Board begs the question of how the Court should
proceed. The Water Supply Agreement contains an arbitration
provision. Neither Section 1.C.ii nor any of the other
provisions of the Water Supply Agreement that SBRMCOA argues are

*ultra vires* with respect to the Board are arbitration

provisions. Neither Section 1.C.ii nor any of the other

provisions of the Water Supply Agreement that SBRMCOA argues are

*ultra vires* with respect to the Board contain the type of

temporal limitations that the Court previously indicated could

be viewed as impacting the validity of the contract as a whole.

*See supra* Section III.A. As such, for the reasons the Court

previously discussed, none of the provisions of the Water Supply

Agreement that SBRMCOA contends are beyond the authority of the

Board render the Water Supply Agreement as a whole, including

its arbitration clause, *ultra vires*. *See id.* Therefore, neither

Section 1.C.ii nor any of the other provisions of the Water

Supply Agreement that SBRMCOA argues are *ultra vires* with

respect to the Board prevent the arbitrator from addressing the

parties' dispute.[7] *See id.*

### iii. Contract Between Bayside and the Association with a Duration Greater than One Year

SBRMCOA also argues that the Water Supply Agreement is

*ultra vires* with respect to Bayside because the Water Supply

Agreement is a contract with a duration greater than one year.

---

[7] Indeed, because the severability issue is for the arbitrator, not the Court, it was only with an abundance of caution and in an effort to fully comply with the letter and spirit of the Third Circuit's mandate that the Court addressed whether the Water Supply Agreement conflicted with the Declaration.

The Declaration provides that "[n]either Sponsor nor any of its agents shall enter into any contract that would bind the Association or the Board of Directors for more than one year." (ECF 105-4, Decl. of Condo. § 4.B.11.) Bayside is the Sponsor. (*Id.* at pg. 1.)

The Water Supply Agreement provides that its term "shall commence on the date hereof and shall terminate on June 30, 2010 unless sooner terminated . . . ." (ECF No. 105-1, Water Supply Agreement § 1(a).) Bayside and the Association entered into the Water Supply Agreement in August, 2005. *SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 275 (3d Cir. 2013)("In a prior proceeding before the Virgin Islands Superior Court, the Condominium Association attached the same Water Supply Agreement dated June 2005 to its complaint in which it averred that 'two agreements [were] signed in August 2005 . . . COA Water Supply Agreement . . . dated "June ____, 2005" *[sic]* ' (emphasis added). Having alleged in another legal proceeding that the June 2005 date on the Water Supply Agreement was merely a typographical error, the Condominium Association is estopped from arguing otherwise in this case.")(alterations in original).

SBRMCOA argues that the Declaration, by its plain language, prevents Bayside from entering into a contract with the Association or the Board for more than one year. Beachside argues that this provision does not apply because the provision

was only intended to prevent Bayside from entering into long-term contracts on *behalf* of the Board, not *with* the Board.

For the Court to hold that Bayside's actions were *ultra vires*, the Court must find: (1) that Bayside's actions violated the Declaration; and (2) that Bayside's violation of the Declaration rendered Bayside's actions *ultra vires*. In its brief, SBRMCOA only addresses whether Bayside's actions violated the Declaration. SBRMCOA then presumes that if Bayside violated the Declaration, Bayside's actions were necessarily *ultra vires*.

Such a presumption confounds logic. "An *ultra vires* act is one which is impermissible as beyond the power or capacity of the entity in question." *Hollar v. Gov't of the Virgin Islands*, 857 F.2d 163, 168 (3d Cir. 1988). As such, an act is *ultra vires* when it is "beyond the scope of power allowed or granted by a corporate charter or by law . . . " or otherwise "unauthorized . . . ." *Ultra Vires*, Black's Law Dictionary (10th ed. 2014). Bayside and SBRMCOA are two separate entities. The Declaration is a charter of SBRMCOA, *not* Bayside. One entity's violation of a second entity's bylaws or charter does not necessarily render the first entity's actions *ultra vires* with respect to the second entity's corporate charter. If, for example, Walmart were to amend its corporate documents to provide that Kmart could not enter into contracts longer than one-year, such a restriction would clearly not render Kmart's contracts *ultra vires*.

SBRMCOA v. Bayside Resort, Inc.
Civil No. 2006-42
Memorandum Opinion
Page 25

No evidence was presented to show that the Declaration is a
corporate document of Bayside. Rather, the Declaration reflects
that Bayside is a Delaware corporation that created SBRMCOA by
filing the Declaration. (ECF 105-4, Decl. of Condo. at pg. 1.)
Therefore, because there is no evidence that the Declaration, or
the by-laws enacted under the Declaration, are *Bayside's*
corporate documents, those documents do not generally restrict
Bayside's authority.[8] As such, there is no evidence that
Bayside's actions were beyond the scope of power allowed or
granted by *its* corporate charter or bylaws.

The Court's inquiry does not end there, however. A
corporate act may be unauthorized even if permitted by a
corporation's corporate documents. Indeed, a corporation, while
acting as the agent of a second entity, may engage in an act
that the first corporation's corporate charter permits. At the
same time, that act will be *ultra vires* if the agent was not
authorized to engage in that act *on behalf* of the second entity.
*See Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99 (3d Cir.
2000). Therefore, to the extent that Bayside acts as an agent of
the Association, the Declaration limits Bayside's authority. As
such, the Court is satisfied that regardless of the plain

---

[8] To be clear, the Court is only addressing whether this provision renders the
Water Supply Agreement *ultra vires*. The Court is not addressing whether
SBRMCOA has a remedy under any legal theory against Bayside for violating
this provision of the Declaration.

*SBRMCOA v. Bayside Resort, Inc.*
Civil No. 2006-42
Memorandum Opinion
Page 26

language of the Declaration, when Bayside enters into a contract that would bind the Association or the Board of Directors for more than one year, its actions are *ultra vires* only when it is acting as an agent for the Association or the Board, not when it is contracting *with* the Board or Association.[9]

Here, Bayside entered into the Water Supply Agreement *with* the Board and the Association. Bayside was not acting on behalf of the Board or the Association. Accordingly, when Bayside entered into the Water Supply Agreement with the Board and the Association, Bayside's actions were not *ultra vires* even though the Water Supply Agreement has a duration longer than one year.

## IV.   CONCLUSION

The Court finds that at least one of the provisions in the Water Supply Agreement is *ultra vires* with respect to the Board. *See supra* III.B.2.i. Nevertheless, none of the provisions in the Water Supply Agreement that SBRMCOA contends are beyond the authority of the Board render the arbitration clause *ultra*

---

[9] Such a situation is not difficult to imagine in the context of regular business as "[t]he outside directors of large U.S. firms tend to be officers of other leading firms." Mark S. Mizruchi, Who Controls Whom Revisited: Managers, Boards of Directors, and Corporate Governance in Large U.S. Firms 14 (July 2003)(unpublished manuscript), *available at* http://www-personal.umich.edu/~mizruchi/whocontrols.pdf. For example, if an officer of General Motors served on the board of Walmart, that officer, acting as an officer of General Motors, could enter into a contract with Walmart. At the same time, if the officer of General Motors, in her capacity as a Walmart board member, sits on a Walmart compensation committee and contracts on *behalf* of Walmart and exceeds *Walmart's* corporate charter, Walmart's board, through its agent--the officer of General Motors--may have engaged in *ultra vires* conduct.

*vires*. *See supra* Section III.A. Although the provision in the Water Supply Agreement that SBRMCOA contends is *ultra vires* with respect to Bayside could render the arbitration clause *ultra vires*, the Court finds that that provision is not *ultra vires* with respect to Bayside. *See supra* III.B.2.iii.

Accordingly, although at least one provision of the Water Supply Agreement is *ultra vires* with respect to the Board, this matter must still be referred to arbitration. *See supra* Section III.A.


                                        S_____
                                          **Curtis V. Gómez**
                                          **District Judge**